1    W. Scott Cameron, State Bar No. 229828
Kavan J. Jeppson, State Bar No. 327547
2    **WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation
3    400 Capitol Mall, 11th Floor
Sacramento, California   95814
4    (916) 558-6000 – Main
(916) 446-1611 – Facsimile
5    scameron@weintraub.com
kjeppson@weintraub.com
6

7    Attorneys for Plaintiff Railroad 1900, LLC

8

9                  **UNITED STATES DISTRICT COURT**

10             **EASTERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12    RAILROAD 1900, LLC, a Delaware limited liability company, | Case No.: 2:21-cv-01673-WBS-DB |
| 13 | **PLAINTIFF RAILROAD 1900, LLC'S** |
| 14            Plaintiff, | **OPPOSITION TO DEFENDANT CITY OF SACRAMENTO'S MOTION FOR** |
| 15      vs. | **SUMMARY JUDGMENT** |
| 16    CITY OF SACRAMENTO, a municipal | Date:        November 13, 2023 |
| 17    entity | Time:        1:30 p.m.<br>Courtroom: 5, 14th Floor |
| 18            Defendant. | Judge:      Hon. William B. Shubb<br>Trial Date:  February 13, 2023 |
| 19 | Complaint Filed: September 15, 2021 |

20

21

22

23

24

25

26

27

28

weintraub tobin chediak coleman grodin

1

**TABLE OF CONTENTS**

2
**Page(s)**

3    **I.**    INTRODUCTION ................................................................................................. 6

4    **II.**    STATEMENT OF ADDITIONAL DISPUTED FACTS ................................... 7

5
        **A.**    The City Opened a Homeless Shelter Along Railroad Drive Then
6
              Abruptly Shut it Down.................................................................................. 8

7
        **B.**    The City Chose Not to Enforce the Law Along Railroad Drive and
              Instead Provided Sustenance and Support to Homeless Individuals
8
              Residing Around Railroad Drive. ................................................................ 8

9
        **C.**    The City Failed to Respond to Plaintiff's Years' Long Calls for Help. ..... 9
10
        **D.**    People of the State of California v. The City of Sacramento, et. al. ........ 10
11
        **E.**    Prime Auctions, LLC et. al. v. The City of Sacramento, et. al. .............. 10
12
        **F.**    Since the Filing of Plaintiff's Lawsuit, the City Engaged in Retaliatory
              Conduct to Enforce the Law *Only as it Applies to Plaintiff.* ................... 11
13
        **G.**    Plaintiff has been Forced to Spend Hundreds of Thousands of Dollars
14
              to Protect and Clean its Property due to the City's Failure to Enforce
              its Laws. ...................................................................................................... 11

15    **III.**    SUMMARY JUDGMENT STANDARD .......................................................... 12

16    **IV.**    LEGAL ARGUMENT........................................................................................ 13

17
        **A.**    Plaintiff has Article III Standing to Bring its 42 U.S.C. § 1983 Claims. ............... 13
18
        **B.**    Summary Judgment Is Not Appropriate on Plaintiff's State Created
19
              Danger Claim................................................................................................ 16
20
              1.    There are genuine issues of material fact as to whether the City
                      affirmatively created and/or supported the lawless and dangerous
21
                      environment around the 1900 block of Railroad Drive that left
                      Plaintiff in a more dangerous situation........................................ 16
22
              2.    There are genuine issues of material fact as to whether the risk
23
                      of harm was foreseeable. ............................................................. 18
24
              3.    There are genuine issues of material fact as to whether the City was
                      deliberately indifferent to Plaintiff. ............................................ 19
25
        **C.**    Summary Judgment is Not Appropriate on Plaintiff's *Monell* Claim. ................... 19
26
        **D.**    Summary Judgment is Not Appropriate On Plaintiff's State Law Claims. ............ 20
27
              1.    The City fails to substantively challenge Plaintiff's public and
28
                      private nuisance claims.................................................................. 20

weintraub tobin chediak coleman grodin

2.      Summary judgment is not appropriate on Plaintiff's violation of mandatory duty claim. ....................................................................22

3.      Summary judgment is not appropriate on Plaintiff's claim for violation of Art. I, § 1 of the California Constitution. ..................................23

**V.      CONCLUSION**.................................................................................................24

**weintraub tobin** chediak coleman grodin

Plaintiff's Opposition to Defendant's Motion for
Summary Judgment

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986)...................................................................13

*Brown v. Lynch*,
831 F.3d 1146 (9th Cir. 2016) .....................................................21

*Butterworth v. Boyd*,
12 Cal. 2d 140 (1938)..................................................................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................13

*Elton v. County of Orange*,
3 Cal. App. 3d 1053 (1970) .........................................................22

*Haggis v. City of Los Angeles*,
22 Cal.4th 490 (2000)..................................................................22

*Hunt v. Superior Court*,
21 Cal. 4th 984 (1999).................................................................24

*Hunters Cap., LLC v. City of Seattle*,
2023 U.S. Dist. LEXIS 6856 .......................................................15

*Hunters Capital, LLC v. City of Seattle*,
499 F. Supp. 3d 888 (W.D. 2020)...........................................15, 19

*Kennedy v. City of Ridgefield*,
439 F. 3d 1055 (9th Cir. 2006) ...................................14, 15, 16, 18

*L.W. v. Grubbs*,
974 F.2d 119 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993)............................................20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................14

*Martin v. Boise*,
902 F. 3d 584 (9th Cir. 2018) .....................................7, 8, 10, 21

*Martinez v. City of Clovis*,
943 F. 3d 1260 (9th Cir. 2019) .................................14, 17, 19, 20

*Patel v. Kent School Dist.*,
648 F.3d 965 (9th Cir. 2011) ......................................................14

weintraub tobin chediak coleman grodin

*Recchia v. City of Los Angeles Dep't of Animal Serv.*,
    889 F. 3d 553 (9th Cir. 2018) ......................................................................... 23

*Tailfeather v. Bd. of Supervisors*,
    48 Cal. App. 4th 1223 (1996) ......................................................................... 24

*Tauscher v. Phoenix Bd. of Realtors, Inc.*,
    931 F.3d 959 (9th Cir. 2019) .......................................................................... 13

*Thompson v. City of Los Angeles*,
    885 F.2d 1439 (1989), *overruled on other grounds* in *Bull v. City. & Cnty of
    San Francisco*, 595 F. 3d 964 (9th Cir. 2010) .............................................. 21

*Valley Forge Christian College v. Americans for Sep. of Church & State, Inc.*,
    454 U.S. 464 (1982) ........................................................................................ 16

*Wood v. Ostrander*,
    879 F. 2d 589-90 (9th Cir. 1989) ................................................................... 17

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 8, 14

Cal. Govt. Code § 815 .................................................................................... 22

Cal. Govt. Code § 815.6 .............................................................................. 8, 22

Cal. Govt. Code § 818.2 .................................................................................. 22

Cal. Govt. Code § 820.2 .................................................................................. 22

Cal. Welf. & Inst. Code § 10000 .................................................................... 23

Cal. Welf. & Inst. Code § 140595 ................................................................... 24

Cal. Welf. & Inst. Code § 17000 ............................................................. 8, 23, 24

Sacramento City Code, § 8.20.010 ............................................................ 22, 23

Sacramento City Code, §§ 8.20.010-020 ........................................................ 25

Sacramento City Code § 12.16.020 ................................................................. 12

**Other Authorities**

California Constitution, Article I, Section 1 ................................................. 8, 24

Fed. R. Civ. P. 56 ............................................................................................ 13

Fed. R. Civ. P. 12(b)(6) ................................................................................... 15

U.S. Constitution Fifth and Fourteenth Amendments ...................................... 8

weintraub tobin chediak coleman grodin

Plaintiff's Opposition to Defendant's Motion for
Summary Judgment

1       Plaintiff Railroad 1900, LLC ("Plaintiff") submits the following opposition to Defendant
2 City of Sacramento's ("City") Motion for Summary Judgment ("Motion").

**I.     INTRODUCTION**

4       Plaintiff was forced to bring this lawsuit against the City due to the City's refusal to enforce
5 its own laws and those of the state that prohibit homeless persons from loitering, vandalizing, and
6 otherwise inhabiting and destroying Plaintiff's private property and the surrounding public property.
7 Plaintiff owns commercial real estate located at 1900, 1955 and 1957 Railroad Drive, Sacramento,
8 California, which is near the American River Parkway. The City's failure and outright refusal to
9 enforce its laws has caused, and continues to cause, Plaintiff significant injury and damages.  The
10 City's actions have caused Plaintiff's property value to decrease, it has required Plaintiff to hire
11 private security to avoid further damage to Plaintiff's property, and it has caused Plaintiff to incur
12 significant expenses cleaning the area that became consumed with waste, debris, excrement, drug
13 paraphernalia, and fire damage.  The City's actions and/or intentional inactions have effectively
14 deprived Plaintiff of the full use and enjoyment of its property and has threatened the lives, health,
15 and safety of the residents surrounding the 1900 block of Railroad Drive.

16       The City's Motion tries to ignore and evade the truth and rely on technical arguments to
17 dismiss Plaintiff's causes of action.  Yet the City cannot dispute the fact that it has affirmatively
18 created, or increased the risk that Plaintiff would be exposed to, dangerous conditions along Railroad
19 Drive, and Plaintiff has been harmed as a result and forced to spend hundreds of thousands of dollars
20 to hire private security to protect its property.  In fact, in 2017, the City created an emergency
21 homeless shelter in one of the buildings on Railroad Drive very close to Plaintiff's property, drawing
22 the homeless population to Railroad Drive, only to close the homeless shelter in 2019 knowing the
23 homeless individuals would remain around Railroad Drive.   And it did so with deliberate
24 indifference to Plaintiff's constitutional rights giving rise to Plaintiff's substantive due process and
25 state law claims as Plaintiff's property was damaged and the area fell into lawlessness and chaos.
26 The City has a duty to enforce the laws of this state and the Sacramento City Code but it chose to
27 shirk it, hiding behind an improper interpretation of the Ninth Circuit case *Martin v. Boise* and
28 imposing a de-facto policy of refusing to enforce its laws around Railroad Drive.  The City provides

weintraub tobin chediak coleman grodin

sustenance to the homeless population and directs its staff to allow non-profits to provide food and material support along Railroad Drive (Motion at 4:18-23), all while refusing to enforce its own laws and protect its citizens and businesses.  Even if the City's interpretation of *Martin v. Boise* was correct, which it is not, nothing in that case (or any other) says that homeless persons are immune from prosecution for any crimes they commit just because they are homeless.  Even under *Boise*, they are still subject to the laws against violence, vandalism, arson, and destruction of property, and can and should be prosecuted for violating them.  Plaintiff's complaint is not alleging claims against homeless persons for being homeless.  It is against the City for failing to protect Plaintiff from known and obvious dangers posed by the homeless persons on or near Railroad Drive that routinely and continuously broke those laws knowing they would face no consequences.

The City simply cannot avoid the numerous disputed issues of fact regarding whether the City violated Plaintiff's fundamental constitutional and statutory rights as alleged in the Second Amended Complaint ("SAC").  Plaintiff respectfully requests that this Court deny the City's Motion in full.

## II.     STATEMENT OF ADDITIONAL DISPUTED FACTS

The City faces a significant homelessness crisis.  Unfortunately, the City, and its highest-ranking decisionmakers, have chosen to deal with the situation by imposing a de facto policy of allowing certain regions of the city to serve as containment zones of lawlessness, including the area surrounding Railroad Drive. The City has effectively handed over the area surrounding Railroad Drive to the homeless population and turned the area into a no-response and no-enforcement containment zone.  Because of this, Plaintiff filed its lawsuit against the City alleging seven claims for relief: (1) Violation of Due Process under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the U.S. Constitution; (2) Violation of Due Process – State Created Danger Doctrine; (3) Municipal Liability for Unconstitutional Custom or Policy; (4) Public Nuisance; (5) Private Nuisance; (6) Violation of Mandatory Duty pursuant to California Government Code § 815.6 and California Welfare and Institutions Code § 17000; and (7) Deprivation of the Guarantee of Safety and Pursuit of Happiness under California Constitution, Article I, Section 1. *See* ECF No. 34.

weintraub tobin chediak coleman grodin

Plaintiff owns three commercial real estate buildings located at 1900, 1955, and 1957 Railroad Drive, Sacramento, California 95814 (collectively the "Property"). *See* Plaintiff's Statement of Disputed Facts in Support of Opposition to Defendant's Motion ("SDF") No. 1.  The Property is located near the American River Parkway.  SDF No. 2.  Despite Plaintiff's best efforts to keep its Property safe, the area surrounding the Property became blighted with abandoned and burned vehicles and streets lined with mobile homes, RVs, and other vehicles serving as housing.

**A.      The City Opened a Homeless Shelter Along Railroad Drive Then Abruptly Shut it Down.**

In December of 2017, the City opened an emergency shelter for homeless individuals along Railroad Drive near Plaintiff's Property.  SDF No. 3.  The City-run homeless shelter operated along Railroad Drive from December 2017 through April 2019.  *Ibid*.  After the homeless shelter closed down, the City failed to relocate and/or provide housing to all homeless individuals who had resided at the homeless shelter.  SDF No. 4.  This led to homeless individuals occupying tents, mobile homes, RVs, and other vehicles to serve as housing along Railroad Drive on or near Plaintiff's Property.  SDF No. 5.  The City also allowed resources, such as mobile toilets, to be kept on City property near Plaintiff's Property, further encouraging and facilitating the homeless population to not leave the area.  SDF No. 6.

After the City's homeless shelter closed down in 2019, Plaintiff's Property was effectively overtaken by the homeless population. SDF No. 7.  Plaintiff's Property become a graveyard for abandoned vehicles, and its streets were littered with waste, debris, excrement, drug paraphernalia, and fire damage.  *Id*. and Ex. 1 thereto.  There have also been numerous violent incidents in the area, including a murder, arson, vandalism, and multiple individuals have been seen brandishing weapons. SDF No. 8.

**B.      The City Chose Not to Enforce the Law Along Railroad Drive and Instead Provided Sustenance and Support to Homeless Individuals Residing Around Railroad Drive.**

Since the closure of the City's homeless shelter in 2019, the City has refused to enforce its own laws and those of the state that prohibit the homeless from committing acts of violence, arson, drug use and dealing, prostitution, loitering, vandalizing, and otherwise inhabiting private property

weintraub tobin chediak coleman grodin

and the surrounding public property.  SDF No. 9.  This includes the City's refusal to remove abandoned vehicles and enforce the 24-hour no parking sign and several "No Overnight Parking" signs located near Plaintiff's Property, which has encouraged the homeless to remain in the area and given them a base of operations to continue their lawlessness.  *Ibid*.  The City also directed its enforcement agencies, including the Sacramento Police Department ("SPD") and Sacramento Code Enforcement ("Code Enforcement"), to stop policing and enforcing the laws around Railroad Drive. SDF No. 10.  The City claimed that the Ninth Circuit's decision in *Martin v. Boise*, 902 F. 3d 584 (9th Cir. 2018) precludes it from prosecuting any homeless person or even being able to relocate the homeless persons outside of the area surrounding Railroad Drive or to clean up the debris, including abandoned and burned vehicles, left in their wake. *Id*. and Ex. 2 thereto.  The area surrounding Railroad Drive had become so dangerous that the City's *own* parking enforcement employees were afraid to go to Railroad Drive after 9:00 p.m.  SDF No. 11 and Ex. 3 thereto.  But even while knowing how dangerous the area had become, and its own employees' fear of going there after dark, the City still refused to do anything to enforce its laws and make the area safer.  It simply ignored the situation.

Instead of enforcing the law, the City concedes that it provided affirmative support to homeless individuals residing near Plaintiff's Property by providing sustenance to homeless individuals and directing advocacy groups to deliver resources to the homeless population to help reduce the likelihood of the recipients relocating to more prominent areas of the city. *See* City's Separate Statement of Undisputed Material Facts ("UMF") No. 8; Declaration of Benn Worrall ("Worrall Decl.") ¶¶ 5-7.

C.    **The City Failed to Respond to Plaintiff's Years' Long Calls for Help.**

From 2019 through 2023, Plaintiff's owner, Rich Eaton, sent <u>hundreds</u> of emails, text messages, and phone calls to City officials pleading with the City to enforce its laws surrounding Plaintiff's Property. SDF No. 12.  Plaintiff has had to deal with fire damage caused by members of the homeless population on Plaintiff's Property, destruction of Plaintiff's fences, brandishing of weapons, drug-dealing and prostitution, and a dog attack that resulted from one of the members of the homeless population turning his dog loose on Plaintiff's private security.  SDF No. 13.  On the

rare occasions where the City's agencies did respond to 1900 Railroad Drive, the City failed to take any meaningful action to correct the crime and lawlessness plaguing the area and allowed it to almost immediately return to its prior condition.  SDF No. 14.

**D.      People of the State of California v. The City of Sacramento, et. al.**

The City's dereliction of its duties has gone so far that the Sacramento County District Attorney's Office ("DA") filed a civil lawsuit against the City, on September 19, 2023, alleging causes of action for (1) Public Nuisance; (2) Private Nuisance; and (3) Inverse Condemnation related to the City's refusal to confront or respond to the homelessness crisis. SDF No. 15 and Ex. 1 thereto. Notably, the DA cites the same law that forms the basis of Plaintiff's causes of action for public and private nuisance. *Id.* and Ex. 1 pp. 33-34.  The DA's complaint alleges that "Past approaches by the City to address the unhoused crisis have failed. The community cannot stand idly by while lawless zones that promote crime erode the well-being of our community for those who live and work here." *Id.* and Ex. 1 ¶ 10. The DA's complaint further alleges, similar to the present matter, that "Some respondents said their calls to the City for help had gone unanswered. Additional respondents received comments from elected leaders chastising them for seeking help and directed them to 'be thankful' for being housed." *Id.* and Ex. 1 ¶ 13.  Further, in an August 7, 2023 email, City Attorney Susan Alcala Wood conceded the following: "SPD is simply not issuing citations for unlawful camping, unlawful storage, sidewalk obstructions or any Sacramento city code sections related to the homeless encampments…Our data indicates that no citations have been referred to our office…we cannot prosecute cases if no cases are sent to us." *Id.* and Ex. 1 ¶ 26.  As the DA's complaint aptly goes on to state: "This letter was a shocking admission of liability that the <u>City has failed to enforce the law</u>." *Id.* and Ex. 1 p. 27 (emphasis added).

**E.      Prime Auctions, LLC et. al. v. The City of Sacramento, et. al.**

Local businesses and City residents also filed a similar lawsuit against the City on September 19, 2023, alleging causes of action for (1) Negligence; (2) Public Nuisance; (3) Private Nuisance; and (4) Inverse Condemnation related to the City's handling of the homelessness crisis. SDF No. 16 and Ex. 2 thereto.  The *Prime Auctions, LLC* complaint also cites the same law that forms the basis of Plaintiff's causes of action for public and private nuisance.  *Id.* and Ex. 2 pp. 7-8.

Similar to Plaintiff's SAC, the *Prime Auctions, LLC* complaint alleges that the plaintiffs have called the City's 3-1-1 non-emergency response line on numerous occasions in response to homeless individuals "openly sell[ing] and us[ing] drugs," "break[ing] into cars," "steal[ing] property," defecat[ing] in the street and on the sidewalk," and "engag[ing] in prostitution," to which the plaintiffs are routinely informed by City officials that "<u>nothing can be done</u>." *Id*. and Ex. 2 ¶¶ 23-29 (emphasis added). These complaints mirror the situation the City allowed, and in fact fostered, on Railroad Drive.

**F.    Since the Filing of Plaintiff's Lawsuit, the City Engaged in Retaliatory Conduct to Enforce the Law *Only as it Applies to Plaintiff*.**

Since, Plaintiff's filing of its original complaint in September of 2021, the City also engaged in retaliatory conduct against Plaintiff and has enforced or attempted to enforce its laws only as applied to Plaintiff. In April of 2022, due to the City's failure to enforce the law around Railroad Drive, Plaintiff erected a barrier at the front entrance of Railroad Drive to prevent RVs and cars from entering Railroad Drive to park on Plaintiff's Property and to stop nefarious individuals from entering Railroad Drive to engage in open drug dealing and prostitution. SDF No. 17. The City cited Plaintiff under Sacramento City Code § 12.16.020 for alleged violations of the law, for use of a barrier to prevent the homeless from further destroying Plaintiff's Property, but turned a blind eye to the lawlessness and chaos caused by the homeless population. SDF No. 18. Shockingly, the City also issued parking citations for Plaintiff's security vehicles while at the same time refusing to issue citations for the many illegally parked cars of homeless persons. *Ibid.*

**G.    Plaintiff has been Forced to Spend Hundreds of Thousands of Dollars to Protect and Clean its Property due to the City's Failure to Enforce its Laws.**

Plaintiff has been subjected to ever-increasing property damage and economic loss every day that the City carries out its policy and practice of supporting the homeless population's invasion and occupation of 1900 Railroad Drive, abandonment of the area, and refusal to enforce its laws. SDF No. 19. Plaintiff has been forced to expend additional monetary resources on third-party security and cleanup crews that would not be necessary if the City were to uphold its duties and

weintraub tobin chediak coleman grodin

obligations to its constituency. *Ibid*. To date, these expenses total no less than $429,492.14 and are broken down as follows:

- Gate and fence modifications and repairs resulting from vandalism: $21,866.15
- Installation of wrought iron fence with rolling gate: $38,959.00
- Tree trimming required to remove shade from homeless camps and street cleaning of debris from homeless: $42,534.30
- Security patrol from 12/16/2020 to 3/31/2022: $19,000
- Additional gate and fence additions and/or repairs due to vandalism: $10,790.00
- Electric fence: $14,070
- Street security 4/2022 to 1/2023: $187,554.50

SDF No. 20.

These funds have been spent in addition to the significant taxes that Plaintiff has been forced to pay to the City and the State of California for, among other things, services that it is clearly not receiving the benefit of, *such as law enforcement*. And additional security clearly isn't a perfect solution since these incidents occurred despite the additional security, and also because members of the homeless population have not hesitated to engage in acts of violence, such as brandishing weapons and turning loose an aggressive pit bull on one of the security officers.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment must be denied if there are genuine issues of material fact when the evidence is viewed in the light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56. The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Even if the moving party meets that burden, the motion is defeated if the nonmoving party can set out facts showing a "genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). A genuine issue exists "if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party." *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019). The City simply cannot prove that there are <u>no</u> genuine issues of material fact and summary judgment must be denied.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment

IV.   **LEGAL ARGUMENT**

A.   **Plaintiff has Article III Standing to Bring its 42 U.S.C. § 1983 Claims.**

The City argues that Plaintiff lacks Article III standing because "Plaintiff has no standing to seek enforcement of specific laws and prosecution of those experiencing homelessness at Railroad Drive." Motion at 7:27-28, 8:24-25.  The City's argument misses the mark.  Article III standing has three prongs.  First, Plaintiff must show it suffers an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Second, the injury must be "fairly traceable" to the City's conduct.  *Ibid*.  Third, the injury must be "redressable" by the court.  *Id*. at 561.  Plaintiff easily meets each of these requirements and has standing to bring its substantive due process claims under the state-created danger exception.

"The general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to protect individuals from third parties." *Martinez v. City of Clovis*, 943 F. 3d 1260, 1271 (9th Cir. 2019).  However, "[t]here are two exceptions to this rule: (1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception)…; and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)…" *Patel v. Kent School Dist*., 648 F.3d 965, 971-72 (9th Cir. 2011).  Deliberate indifference requires that "the defendant 'knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it.'"  *Id*. at 974 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).  "The deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state." *Ibid*.

This Circuit's analysis of the state-created danger exception in *Kennedy v. City of Ridgefield*, 439 F. 3d 1055 (9th Cir. 2006) is analogous to the present matter and instructive here.  In *Kennedy*, the plaintiff contacted the City of Ridgefield police department to report that a thirteen-year-old neighbor had molested her nine-year-old daughter.  *Id*. at 1057.  At the time plaintiff had contacted the Ridgefield police department, the plaintiff had warned the Ridgefield officers that the thirteen-year-old neighbor had exhibited violent tendencies.  *Ibid*.  The Ridgefield police assured the plaintiff that she would be given notice prior to any police contact with the neighbor's family about the

weintraub tobin chediak coleman grodin

allegations of violence. *Id.* at 1058.  However, the violent neighbor was informed of the plaintiff's allegations shortly before the officers warned the plaintiff.  *Ibid.*  Later that night, the violent neighbor broke into the plaintiff's home, shot plaintiff, and killed plaintiff's husband.  *Ibid.*  The plaintiff filed suit against the police department alleging the officers violated her substantive due process rights by placing her in known danger with deliberate indifference to her personal physical safety.  *Ibid.*  The *Kennedy* court found that by informing the neighbor of the allegations without first warning plaintiff, the officer had "affirmatively created an actual, particularized danger [the plaintiff] would not have otherwise face." *Id.* at 1063.  The *Kennedy* court also found that because the plaintiff had warned the officer repeatedly about the neighbor's violent tendencies, the officer's decision to inform the neighbor of the allegations, without first warning plaintiff, exposed the plaintiff to a "known or obvious" danger that the officer acted with deliberate indifference to. *Id.* at 1064-65.

Furthermore, in the substantially similar case *Hunters Capital, LLC v. City of Seattle*, 499 F. Supp. 3d 888, 902-903 (W.D. 2020), a group of Seattle businesses sued the City of Seattle, under the state-created danger doctrine, after the City adopted a "no response" policy to the "Capitol Hill Anonymous Zone" which affirmatively placed the plaintiffs in a worse position.  This case survived a Rule 12(b)(6) motion as to all causes of actions, except the equal protection claim, and the Court did not find that the business entity plaintiffs lacked standing to bring their substantive due process causes of action.[1]

Here, the City has been on notice of the "known or obvious" dangers surrounding the Property since 2019.  Plaintiff's owner, Rich Eaton, has sent <u>hundreds</u> of emails, text messages, and phone calls to City describing the lawlessness, property damage, fire damage, brandishing of weapons, drug-dealing, and prostitution that has plagued Plaintiff's Property and surrounding area since the City made the affirmative decision to attract the homeless to the area by establishing a

---

[1] This case was later decided in favor of the City of Seattle on a motion for summary judgment.  *See Hunters Cap., LLC v. City of Seattle*, 2023 U.S. Dist. LEXIS 6856.  However, the Court appeared to grant summary judgment on the ground that the plaintiffs failed to present evidence that established that the City created an actual, particularized danger as to the plaintiffs, as opposed to the general public surrounding Seattle's Capitol Hill neighborhood. *Id.* at *22.  In contrast, the City here has specifically exposed Plaintiff to an actual and particularized danger that is taking place directly on Plaintiff's Property along Railroad Drive.

weintraub tobin chediak coleman grodin

homeless shelter on Railroad Drive, abruptly close the shelter knowing the homeless would stay in the area, and to stop enforcing its laws against the homeless even knowing the damage they were causing and danger they were creating.  *See* SDF Nos. 12-13 and Ex. 4 thereto.  In response to the hundreds of complaints by Plaintiff, the City directed its enforcement agencies, including SPD and Code Enforcement, to stop policing and enforcing the laws around Plaintiff's Property, hiding behind the Ninth Circuit's decision in *Martin v. Boise*.  SDF Nos. 10-11.  In fact, on October 15, 2020, SPD Sergeant William Wann stated in an email to Mr. Eaton: "Soon, I think we will be sending social workers out to try to connect the campers with services and my team will only be needed when there is a nexus to some criminal activity. We are pretty much there now."  SDF No. 12 and Ex. 4 at Bates 1900RR_000900.  Not only did the City have knowledge of the dangers around Plaintiff's Property by the numerous complaints, pictures, and videos shared by Mr. Eaton, but the City's own employees admitted that they were afraid to return to Railroad Drive at night time due to how dangerous the area had become.  SDF No. 11 and Ex. 3.  It is indisputable that the City had extensive and on-scene knowledge of the dangers around Plaintiff's Property, including the rampant criminal activity.  Despite full knowledge of what was happening around Plaintiff's Property, the City chose to facilitate resources to homeless individuals (*See* City's UMF No. 8), in essence actively keeping the homeless in the area, and did nothing to protect Plaintiff or its tenants from further violence and destruction caused by the homeless population, just as the police officers failed to do in *Kennedy*.

As a result, Plaintiff has suffered injury in increasing property damage, economic loss, and recurring expenses on third-party security and cleanup crews that would not be necessary if the City were to uphold its duties and obligations to its constituency.  SDF No. 19.  Plaintiff's injuries are "fairly traceable" to the City's policy and practice of supporting the homeless population's invasion and occupation of 1900 Railroad Drive, abandonment of the area, and refusal to enforce its laws.  SDF Nos. 3-10, and 14-16.  And Plaintiff's injury is only redressable by this Court as history has shown that the City will continue to refuse to enforce its own laws absent an order from this Court.

The City cites several cases, including *Valley Forge Christian College v. Americans for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982), for the proposition that the Court

should "refrain from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches."  Motion at 8.  While the homeless crisis may be a question of wide public significance, and while that may be what the Sacramento County DA's lawsuit is alleging, that is not what *this* Court is being asked to address.  As demonstrated above, this case is about the City creating a localized danger and refusing to protect a specific plaintiff from it despite hundreds of complaints and cries for help from that plaintiff.  This is not a separation of powers question.

Accordingly, Plaintiff has standing to bring its substantive due process claims and summary judgment must be denied.

**B.      Summary Judgment Is Not Appropriate on Plaintiff's State Created Danger Claim.**

Under the state-created danger theory, "the state may be constitutionally required to protect a plaintiff that it affirmatively places in danger by acting with deliberate indifference to a known or obvious danger."  *Martinez, supra,* F. 3d at 1271.  Three elements must be met to satisfy the state-created danger: (1) the City's affirmative actions created an actual and particularized danger Plaintiff would not have otherwise faced; (2) the resulting harm to Plaintiff was foreseeable; and (3) the City acted with "deliberate indifference" to the danger.  *Ibid*.  Summary judgment must be denied because there are, at the bare minimum, genuine issues of material fact as to whether the City created an "actual and particularized danger" and acted with "deliberate indifference" toward it.

**1.      There are genuine issues of material fact as to whether the City affirmatively created and/or supported the lawless and dangerous environment around the 1900 block of Railroad Drive that left Plaintiff in a more dangerous situation.**

Under the first prong of a claim for violation of substantive due process, Plaintiff must only establish that the City left Plaintiff in a "situation that was more dangerous than the one" it would have been in if the City had not acted as it did.  *Martinez*, *supra*, 943 F. 3d at 1271.  This requires that the City took some affirmative action that increased the risk that Plaintiff would be harmed.  *Ibid*; *see also Wood v. Ostrander*, 879 F. 2d 589-90 (9th Cir. 1989) (The "affirmative conduct" sufficient for a state created danger claim requires an action that "affirmatively place[s] the plaintiff

weintraub tobin chediak coleman grodin

in a position of danger." *Kennedy*, *supra*, 439 F. 3d at 1063 (The government must "affirmatively create an actual, particularized danger [that the plaintiff] would not otherwise have face.")

Here, the City opened an emergency homeless shelter along Railroad Drive in December of 2017, thereby drawing more homeless persons to the area, and then abruptly closed it down at the end of April 2019.  SDF No. 3.  The City failed to relocate and/or provide housing for individuals who had resided at the City-run homeless shelter, which led to homeless individuals occupying mobile homes, RVs, and other vehicles as housing near Plaintiff's Property.  SDF Nos.  4-5.  Indeed, the City's own evidence shows that the City knew homeless persons would return to or remain in the area after the shelter closed.  SSUMF 9.  This situation did not exist before the City's homeless shelter was established and then shut down.  The City also allowed resources, such as mobile toilets, to be kept near Plaintiff's Property, further encouraging and facilitating the homeless population to not leave the area.  SDF No. 6.  These mobile toilets are still present near Plaintiff's Property today. *Ibid*.

Soon after the closure of the City-run homeless shelter, Plaintiff's Property descended into lawlessness and destruction.  SDF Nos. 7.  The Property became rampant with crime, including serious felonies such as murder, assaults, arson, and brandishing of firearms.  SDF No.  8.  Instead of counteracting the crime by stepping up patrols and enforcing laws around the Property, the City directed its enforcement agencies to stand down.  SDF Nos.  8-10.  The City admits that it provided sustenance to homeless individuals around the Property, such as trash bags and water, and allowed non-profit organizations to provide food to homeless individuals around Plaintiff's Property further encouraging them not to leave.  City's UMF No. 8.  The City's support to the homeless individuals allowed the lawlessness and violence to persist until Plaintiff was forced to hire its own private security to perform the duties the City was legally obligated to perform.  SDF Nos. 19-20.  This series of acts by the City created the danger around Plaintiff's Property. Without these acts, Plaintiff would not face the danger it now does.

Plaintiff cannot dispute any of the above facts, so instead it only argues that the state-created danger doctrine cannot apply because "Neither the U.S. Supreme Court nor the Ninth Circuit Court of Appeals have recognized the application of the state created danger doctrine to a non-person

weintraub tobin chediak coleman grodin

business entity" and Ninth Circuit decisions have limited this cause of action to individual law enforcement officers, not government entities.  Motion at 9:23-10:3.  However, <u>none</u> of the authority cited in Plaintiff's Motion states that the state-created danger doctrine cannot apply to businesses, nor does Plaintiff's authority limit this cause of action only to individuals.  District courts in the Ninth Circuit, however, have applied the state-created danger doctrine to business entities.  *Hunters Capital*, 499 F. Supp. 3d at 902-903.

It is the entirety of the City's conduct, including its employees and policymakers, taken as a whole, that placed Plaintiff at a greater risk of vandalism, property damage, harmed business, reduced profits, and physical harm.  There is at least an issue of fact as to whether Plaintiff is at a greater risk of harm that it would not have faced if the City had not affirmatively acted as it did.

**2.    There are genuine issues of material fact as to whether the risk of harm was foreseeable.**

The evidence of foreseeability here is copious.  The foreseeability prong does not mean that the exact injury must be foreseeable. Rather, the state actor is "liable for creating the foreseeable danger of injury."  *Martinez*, *supra*, 943 F. 3d at 1273-74.  Here, it was eminently foreseeable that Plaintiff would be harmed by the City's actions in opening an emergency homeless shelter near Plaintiff's Property, failing to provide housing for homeless individuals after the shelter closed down, and then failing to enforce all laws along the Property thereafter.

The lawlessness around Plaintiff's Property has been going on since 2019 and the City knew in real time the destruction that was going on based on the hundreds of emails, calls, texts, photographs, and videos Plaintiff's owner provided to the City over several years.  SDF Nos. 7, 12 and Ex. 1, 4.  It no longer had to be foreseen - it was certain and known that absent fundamental change in how the City chose to selectively enforce its laws, the harm the City knew about would continue on Plaintiff's Property. Yet the City continued to aid homeless individuals at the detriment to Plaintiff and all individuals working in or around Plaintiff's Property without doing anything to enforce the laws being repeatedly violated by the homeless in the area.  There are at least genuine issues of material fact as to whether harm to Plaintiff was foreseeable.

### 3. There are genuine issues of material fact as to whether the City was deliberately indifferent to Plaintiff.

The third element of Plaintiff's substantive due process claim is whether the City acted with "deliberate indifference"; that is, whether the City "disregarded a known or obvious consequence of [its] action." *Martinez*, *supra*, 943 F. 3d at 1724.  Deliberate indifference is demonstrated when a defendant has "actual knowledge of, or willfully ignore, impending harm." *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993).  There are genuine issues of material fact on this issue that preclude summary judgment.

Plaintiff has demonstrated in the immediately prior sub-sections of this brief, and Section IV(A), *supra*, that it was both <u>foreseen</u> and <u>known</u> that the City's refusal to enforce its laws would cause the harm it caused, and the City nonetheless pressed on with its facilitation of assistance to homeless individuals around Plaintiff's Property instead of enforcing the law.  SDF Nos. 8-10 and Ex. 2.  Plaintiff repeatedly complained to the City that the homeless in the area were causing damage to his property and harassing its tenants, as well as other businesses on Railroad Drive, and the City did nothing about it.  That, on its own, is evidence of deliberate indifference barring summary judgment.  But there is, of course, much more than that.  The City's deliberate indifference to the health and safety of its constituents has gone so far that other entities and individuals, including Sacramento DA Thien Ho, have filed suits against the City based on factual allegations that are <u>substantially similar</u> to Plaintiff's SAC. SDF Nos. 15-16 and Ex 1-2 thereto.  Accordingly, there are numerous genuine issues of material fact precluding summary judgment on the issue of deliberate indifference.

### C. Summary Judgment is Not Appropriate on Plaintiff's *Monell* Claim.

The City moves for summary judgment on Plaintiff's claim under the *Monell* doctrine on the grounds that it did not create any unconstitutional policy or custom related to its actions and/or inactions around Plaintiff's Property.  Motion at 10:14-23.  Relying on the declaration of SPD Captain Bryce Heinlein, the City generally contends that SPD does not have a policy of abandoning the area surrounding the Property, nor does it have a policy of failing to enforce the law around the Property.  *Id*. at 10:23-26.  The City also argues that summary judgment is warranted because Code Compliance purportedly responded to the Property on only 13 occasions in 2021.  *Id*. at 11:23-26.

weintraub tobin chediak coleman grodin

As a threshold matter, Plaintiff has disputed all the facts adduced by the City in support of its arguments through Plaintiff's own personal experience of the lawlessness around the Property and Plaintiff's conversations and emails with City officials.  *See* SDF Nos. 6-14 and Ex 1-4.  While "proof of random acts and isolated events are insufficient to establish custom[,] . . . local government entities are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratifications of an official government policymaker but are so pervasive as to have the force of law."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (1989), *overruled on other grounds* in *Bull v. City & Cnty of San Francisco*, 595 F. 3d 964 (9th Cir. 2010).  Indeed, "[i]f such a showing is made…a local government may be liable for its custom irrespective of whether official policymakers had knowledge of the practice at issue." *Ibid*.  Moreover, a policy of inaction may be a municipal policy within the meaning of *Monell. See Brown v. Lynch,* 831 F.3d 1146, 1152 (9th Cir. 2016).

That is the case here.  The City, relying on its tortured reading of *Martin v. Boise*, effectively immunized anyone who was homeless from prosecution for any crime.  Moreover, hiding behind the COVID-19 pandemic, the City enacted an affirmative policy under which it refused to do anything about the massive homeless encampment that had taken over Railroad Drive, even though the City was fully aware of all of the lawlessness, violence, drug dealing, prostitution, and vandalism that was taking place there.

Accordingly, Plaintiff certainly has raised a dispute of fact about the existence of the customary practices placed in issue by the City's Motion, given the number of calls for service and number of times the City has failed and/or refused to enforce its laws effectively depriving Plaintiff of its Property.  Even when the City did "respond" to Plaintiff's complaints, the City's own evidence does not show the City actually did anything about the situation during those few times when the City did "respond."  City's UMF No. 15, and evidence cited therein.

**D.    Summary Judgment is Not Appropriate On Plaintiff's State Law Claims.**

      **1.    The City fails to substantively challenge Plaintiff's public and private nuisance claims.**

The City offers no substantive challenge to Plaintiff's fourth and fifth claims for public and

weintraub tobin chediak coleman grodin

private nuisance. Instead, the City seeks to avoid liability via two technical arguments, neither of which succeed. The City first claims it is entitled to absolute immunity which bars claims for nuisance under Cal. Govt. Code §§ 815 and 818.2. Motion at 12:10-13. The City is wrong. Govt. Code § 815.6 provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for any injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

"Application of section 815.6 requires that the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *Haggis v. City of Los Angeles*, 22 Cal.4th 490, 498 (2000). "It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." *Ibid*. Here, Sacramento City Code, § 8.20.010 provides the following <u>mandatory duty</u>, in relevant part:

> The city council finds and declares that vehicles which are on public or private property and which are in such a condition so as to constitute an imminent danger to the public are a public nuisance and a nuisance per se and should be removed by summary abatement to avoid injury to the public…

The City Code is not discretionary. It clearly states that conditions dangerous to the public "should" be removed, not "may" or "can" be removed. Sac. City Code, § 8.20.010. As the court noted in *Elton v. County of Orange,* 3 Cal. App. 3d 1053, 1059 (1970), applying section 818.2 immunity to allegations of noncompliance with duties mandated under municipal codes and statutes, "would completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment." *Ibid.*

The City also claims it is entitled to discretionary immunity under Cal. Govt. Code §§ 820.2 because the "City's exercise of its discretionary functions regarding the enforcement of its municipal code, law enforcement, and sanitation constitute policy decisions '[a]t the core of this immunity.'"

weintraub tobin chediak coleman grodin

Motion at 12:17-26.  The City's argument falls apart at the most basic level, because *discretionary* immunity requires a demonstration that the challenged acts were *discretionary*.  As stated above, Plaintiff's nuisance claims are based on the mandatory Sacramento City Code, § 8.20.010 which eliminates any discretion and instead requires the City to act.  The City's argument also fails because the City has failed to provide any showing that its failure to enforce its own laws were discretionary. As the City's own authority states: "to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place."  *See Recchia v. City of Los Angeles Dep't of Animal Serv.*, 889 F. 3d 553, 563 (9th Cir. 2018).  The City has notably not demonstrated that its failure to enforce the law was discretionary, nor has the City identified a policymaker or any allegedly discretionary decision that any City policymaker has made.  Even if a public entity has discretion to act, it is not exempt from nuisance suits unless the action is expressly authorized.  The City simply has not made the requisite showing that it is entitled to either absolute or discretionary immunity. Summary Judgment is not warranted on Plaintiff's Fourth and Fifth Causes of Action for Public and Private Nuisance.

> ### 2.      Summary judgment is not appropriate on Plaintiff's violation of mandatory duty claim.

The City correctly states that a "mandatory duty exists only if a statutory enactment affirmatively imposes the duty and provides implementing guidelines" citing *B.H. v. County of San Bernadino*, 62 Cal. 4th 168, 180 (2015).  However, the City is incorrect that there is no mandatory duty under either Section 17000 or 10000 of the California Welfare and Institutions Code.

Section 17000 mandates that cities provide support to "all incompetent, poor, indigent persons and those incapacitated by age, disease, or accident" when such persons are otherwise unsupported.  Cal. Welf. & Inst. Code § 17000.  The clear purpose of this section is to "provide for protection, care, and assistance to the people of the state in need thereof," to provide "appropriate aid and services to all of its needy and distressed . . . promptly and humanely . . . as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society."  Cal. Welf. & Inst. Code § 10000.

Cities must provide medical care "at a level which does not lead to unnecessary suffering or

Plaintiff's Opposition to Defendant's Motion for
Summary Judgment

weintraub tobin chediak coleman grodin

weintraub tobin chediak coleman grodin

1   endanger life and health when the Legislature has specifically refused to grant that relief."

2   *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1240 (1996).  This includes subsistence

3   medical services and medically necessary services, which are defined as those "reasonable and

4   necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe

5   pain." Cal. Welf. & Inst. Code § 140595.  The City argues that this duty is discretionary, but even

6   if that were true, discretion "must be exercised in a manner that is consistent with – and that furthers

7   the objectives of Section 17000" which requires aid and services to all indigent persons.  *Hunt v.*

8   *Superior Court*, 21 Cal. 4th 984, 1014-15 (1999).  The Court in *Hunt* also noted that Section 17000

9   creates two separate obligations on cities and counties: (1) provisions of "general assistance" in

10  terms of financial relief; and (2) provision of subsistence medical care to the indigent.  *Id.*

11      Additionally, Plaintiff has standing to assert this claim because the City's failure to provide

12  protection, care, and assistance to homeless individuals after the City-run homeless shelter shut

13  down necessarily impacted and exacerbated the dangerous conditions surrounding Plaintiff's

14  Property.  SDF Nos.  3-5, 7.  Thus, the City's failure to perform its mandatory duty is directly

15  correlated to Plaintiff's ongoing injury, not "incidental" as Defendant's Motion suggests.  *See*

16  Motion at 13:19-25.  Summary judgment is not warranted on Plaintiff's Sixth Cause of Action.

17          **3.      Summary judgment is not appropriate on Plaintiff's claim for violation
18          of Art. I, § 1 of the California Constitution.**

19      The City argues that the Sixth Cause of Action fails under the "municipal home rule"

20  described in the 1938 case *Butterworth v. Boyd*, 12 Cal. 2d 140, 146 (1938).  But in that case, the

21  court did not analyze California Constitution, Article I, Section 1, and thus cannot be relied on to

22  argue the grounds for sufficiency of a claim alleged thereunder.

23      The California Constitution guarantees the rights of "enjoying and defending life and liberty,

24  acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and

25  privacy." Cal Const, Art. I § 1.  Plaintiff has shown that the City's actions limit and damage

26  Plaintiff's ability to acquire, protect, and possess its property due to City's failure to enforce its laws

27  surrounding Plaintiff's property.  SDF Nos.  7-14, 19-20.  As described above in Section IV(D)(1),

28  *supra*, the City's refusal to enforce its own laws is not discretionary.  While the City may have

supreme authority in the field of municipal affairs to enact its own legislation and ordinances, the City's current ordinances place a mandatory, not discretionary, duty on it to follow and enforce the law. *See e.g*., Sacramento City Code, §§ 8.20.010-020.  Summary judgment is not warranted on Plaintiff's Seventh Cause of Action.

## V.  CONCLUSION

For the reasons stated above, the Court should deny the City's Motion for Summary Judgment.


Dated:  October 20, 2023

**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation


By:____/s/ *W. Scott Cameron*_____
            W. Scott Cameron
            State Bar No. 229828

Attorneys for Plaintiff Railroad 1900, LLC