1  SUSANA ALCALA WOOD, City Attorney (SBN 156366)
2  GÖKALP Y. GÜRER, Senior Deputy City Attorney (SBN 311919)
   ggurer@cityosacramento.org
3  CITY OF SACRAMENTO
   915 I Street, Room 4010
4  Sacramento, CA  95814-2608
   Telephone: (916) 808-5346
   Facsimile: (916) 808-7455
5
6  Attorneys for the CITY OF SACRAMENTO

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RAILROAD 1900, LLC, a Delaware limited liability company, | Case No.:  2:21-cv-01673-WBS-DB |
| 12 | DEFENDANT CITY OF SACRAMENTO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| 13              Plaintiff, | |
| 14      vs. | Date:          November 13, 2023 |
| 15  CITY OF SACRAMENTO, a municipal entity, | Time:          1:30 p.m. |
| 16 | Courtroom:  5, 14th Floor |
| | Judge:         Hon. William B. Shubb |
| 17              Defendants. | Trial Date:   February 13, 2024 |
| 18 | *Complaint Filed:  September 15, 2021* |

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................6

II. ARGUMENT ....................................................................................7

    A. Plaintiff's first claim for violation of due process under 42 U.S.C. § 1983
       fails because Plaintiff cannot establish Article III standing...........................7

    B. Plaintiff's second claim for state-create danger under 42 U.S.C. § 1983
       fails because the City's opening of a homeless shelter cannot possibly
       amount to "affirmative conduct" in violation of the Fourteenth Amendment,
       and the City's efforts to address homelessness given the finite resources
       available to it cannot amount to "deliberate indifference." .........................9

    C. Plaintiff's third claim for a *Monell* violation under 42 U.S.C. § 1983 fails
       because it is not pled with sufficient particularity... .................................10

    D. Plaintiff's fourth and fifth claims for public and private nuisance fail
       because the City is statutorily immune from liability. .................................12

    E. Plaintiff's sixth claim for violation of Welf. & Inst. Code §§ 17000,
       10000 fails because these provisions confer on the City discretionary
       actions – not mandatory duties; the City thus cannot be liable under
       Gov. Code § 815.6. .................................................................................13

    F. It is immaterial that *Butterworth* did not interpret Article I, Section 1 of
       the California Constitution; its holding controls here and the "municipal
       home rule" thus bars Plaintiff's seventh claim for relief. ..........................14

III. CONCLUSION ..............................................................................15

CITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1339083

## TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Bagley v. City of Sunnyvale,*
  2017 WL 344998 (N.D. Cal. Jan. 24, 2017) ..........................................................12

*Cain v. City of Sacramento,*
  2017 WL 4410116 (E.D. Cal. October 4, 2017) .......................................................13

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
  489 U.S. 189 (1989)..................................................................................................10

*Garcia v. City of Los Angeles,*
  481 F.Supp.3rd 1031 (2020) ...................................................................................... 8

*Harper v. County of Merced,*
  2018 WL 5880786 (E.D. Cal. Nov. 8, 2018) ............................................................11

*Hernandez v. City of San Jose,*
  897 F.3d 1125 (9th Cir. 2018) ...............................................................................9, 10

*A.E. ex rel. Hernandez v. County of Tulare,*
  666 F.3d 631 (9th Cir. 2012) .....................................................................................11

*Hunters Capital, LLC v. City of Seattle,*
  499 F.Supp.3d 888 (W.D. 2020) ............................................................................... 7

*Johnson v. City of Grants Pass,*
  50 F.4th 787 (9th Cir. 2022) ...................................................................................... 8

*Juliana v. United States,*
  947 F.3d 1159 (9th Cir. 2020) .................................................................................... 8

*Kennedy v. City of Ridgefield,*
  439 F.3d 1055 (9th Cir. 2006) ................................................................................... 7

*Lavan v. City of Los Angeles,*
  693 F.3rd 1022, 1024 (9th Cir. 2012) ........................................................................ 8

*Lefebure v. D'Aquilla,*
  15 F.4th 650 (5th Cir. 2021)....................................................................................... 8

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992).................................................................................................... 8

*Martin v. City of Boise,*
  920 F.3d 584 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 674 (2019) ..........................6, 8, 9

CITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1339083

*Martinez v. City of Clovis,*
    943 F.3d 1260 (9th Cir. 2019) ......................................................... 9, 10

*Monell v. New York City Department of Social Services,*
    436 U.S. 658 (1978).............................................................10, 11, 12

*Murguia v. Langdon,*
    61 F.4th 1096 (9th Cir. 2023) ......................................................... 9, 10

*Patel v. Kent Sch. Dist.,*
    648 F.3d 965 (9th Cir. 2011) .............................................................. 9

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ............................................................11

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996)................................................................11

California Cases

*B.H. v. County of San Bernardino,*
    62 Cal.4th 168 (2015) .......................................................................13

*Butterworth v. Boyd,*
    12 Cal.2d. 140 (1938) .......................................................................14

*Elton v. County of Orange,*
    3 Cal.App.3d 1053 (1970)..................................................................13

*Freeny v. City of San Buenaventura,*
    216 Cal.App.4th 1333 (2013) ............................................................. 3

Statutes

42 U.S.C. § 1983 .........................................................................7, 9, 10, 11

Civ. Code
    § 3490, *et seq.* ..............................................................................12
    § 3501, *et seq.* ..............................................................................12

Gov. Code
    § 815.............................................................................................12
    § 815.6...........................................................................................13
    § 818.2...........................................................................................12
    § 820.2...........................................................................................12

Welf. & Inst. Code
    § 17000 ..................................................................................... 13, 14
    § 10000 ..................................................................................... 13, 14

4

Sacramento City Code
   § 8.20.010 ................................................................................................12

Constitutional Provisions

U.S. Const.

Fourth Amendment ............................................................. 8
Eighth Amendment............................................................. 8
Fourteenth Amendment ................................................ 6, 8, 9

Cal. Const.
art. I, § 1 ...........................................................................14
art. XI, § 5 ................................................................... 13, 14
art. XI, § 5(a) ....................................................................14

CITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1339083

I.   INTRODUCTION

In opposition to Defendant CITY OF SACRAMENTO's (the "City") motion for summary judgment, Plaintiff RAILROAD 1900, LLC provides no fact, law, or argument sufficient to create an issue of fact.

Plaintiff's argument is two-fold.

First, Plaintiff argues the City's "refusal" to enforce the law has caused and continues to cause damage to commercial real estate located at Railroad Drive in Sacramento.  However, as repeated throughout this brief, the moving papers, and other pleadings on file, the City cannot be liable for its decision to enforce or not enforce the law under any particular circumstance.   This rule is one of the foundational bedrocks of our tripartite system of government.  It is also codified in the California Government Code to grant the City immunity from related state law claims.

Second, Plaintiff argues the City has "affirmatively created" the homeless issues near Plaintiff's property by opening and then closing a homeless shelter.  This, according to Plaintiff, amounts to state-created danger under the Fourteenth Amendment to the U.S. Constitution.  However, to argue that the City's act of opening a shelter in trying to address homelessness – in an area predominantly occupied by the homeless *prior to* the shelter's opening and *prior to* Plaintiff's purchase of the commercial property in the area – equates to a constitutional violation, stretches the Fourteenth Amendment too far.  This argument has no basis in law, and for good reason, as it would set a dangerous precedent and force municipalities to second-guess humanitarian acts out of fear of potential civil liability.

To buttress its case, Plaintiff asserts the City is "hiding behind an improper interpretation" of *Martin v. Boise* in its supposed decision to not enforce certain laws against the unhoused.  It is unclear what misrepresentation is being referred to here.  In any event, Plaintiff's lawsuit ignores the realities faced by municipalities and their finite resources.  Despite the constrictions resultant from the Ninth Circuit's decision in *Martin v. Boise*, the City has undeterredly engaged in numerous, creative efforts to address homelessness.

CITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1339083

1   Plaintiff does not allege – nor could it – that the City somehow created the troubling

2   conduct of certain homeless individuals, nor that the City assisted them in perpetrating that

3   conduct.  Rather, Plaintiff alleges the City did not *suppress* certain conduct and that, as a result,

4   the homeless have brought down Plaintiff's property value.

5   Plaintiff's grievances are not based in law, and the City will continue to address

6   homelessness as best as it can and with the finite resources available to it.  In the meantime,

7   however, judicial intervention is improper, and the City will continue to seek dismissal of

8   Plaintiff's lawsuit and others like it.

9   II.   ARGUMENT

10   A.   Plaintiff's first claim for violation of due process under 42 U.S.C. § 1983 fails
        because Plaintiff cannot establish Article III standing.
11

12   Plaintiff lacks Article III standing as it essentially seeks to require the City to enforce

13   specific laws and prosecute those experiencing homelessness.

14   In opposition, and to circumvent standing, Plaintiff attempts to analogize this case to two

15   others to try and squeeze into two different exceptions to the rule.

16   First, Plaintiff cites *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) for the

17   proposition that the state-created danger exception here applies.  However, *Kennedy* is easily

18   distinguishable because there the police took a concrete action (contacting the neighbor) when

19   knowing what was likely to follow given the plaintiff's warnings and concerns about the

20   neighbor's propensities.  *Id.* at 1057-58.  Here, however, the homeless individuals occupied the

21   area near the American River Parkway well before the homeless shelter's opening and before

22   Plaintiff even acquired the nearby property, so it cannot be said that the City "affirmatively

23   created an actual, particularized danger" that Plaintiff "would not have otherwise face[d.]".

24   *Contra id.* at 1063.

25   Second, Plaintiff cites *Hunters Capital, LLC v. City of Seattle*, 499 F.Supp.3d 888 (W.D.

26   2020) for the proposition that the deliberate indifference exception also here applies.  However,

27   again, *Hunters Capital* is distinguishable because the police department there actually adopted

28   a "no response" policy to a certain region.  *Id.* at 902-03.  No such thing has occurred here,

7

1   and no such thing would ever occur here.  Rather, and as explained to Plaintiff by City

2   employees, the City is utilizing the resources available to it in addressing homelessness within

3   Sacramento.

4         In essence, what Plaintiff is seeking is a court order compelling the City to cite individuals

5   for legal violations.  This, the law does not allow.  *Contra Martin v. City of Boise*, 920 F.3d 584,

6   589 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 674 (2019) (municipal ordinances that criminalize

7   sleeping, sitting, or lying in all public spaces, when no alternative sleeping space is available,

8   violate the Eighth Amendment).  The personal property of persons experiencing homelessness

9   is protected from seizure by the Fourth and Fourteenth Amendments.  *Lavan v. City of Los

10  Angeles*, 693 F.3rd 1022, 1024 (9th Cir. 2012); *see also Garcia v. City of Los Angeles*, 481

11  F.Supp.3rd 1031 (2020) (granting injunction against enforcement of City ordinance allowing

12  seizure and disposal of "bulky items" in public spaces); *Johnson v. City of Grants Pass*, 50 F.4th

13  787, 808-09 (9th Cir. 2022) (an ordinance precluding the use of bedding materials when

14  sleeping in public violates the Eighth Amendment).  "[I]t is beyond the power of an Article III

15  court to order, design, supervise, or implement the plaintiffs' requested remedial plan . . . [that]

16  would necessarily require a host of complex policy decisions entrusted, for better or worse, to

17  the wisdom and discretion of the executive and legislative branches."  *Juliana v. United States*,

18  947 F.3d 1159, 1171 (9th Cir. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60

19  (1992) ("separation of powers depends largely upon common understanding of what activities

20  are appropriate to legislatures, to executives, and to courts").

21        "Standing is an essential and unchanging part of the case-or-controversy requirement of

22  Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As this Court stated in its

23  order dated March 26, 2023, "[T]he Supreme Court has consistently held, 'a private citizen

24  lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'"

25  [citations]; *see Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021) ("It is a bedrock principle

26  of our system of government that the decision to prosecute is made, not by judges or crime

27  victims, but by officials in the executive branch. And so it is not the province of the judiciary

28

CITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1339083

to dictate to executive branch officials who shall be subject to investigation or prosecution.")
[citations]."  (ECF No. 27; 3:4-17.)

Plaintiff cannot sidestep this requirement and will be unable to establish standing under Article III.

B.    Plaintiff's second claim for state-create danger under 42 U.S.C. § 1983 fails because the City's opening of a homeless shelter cannot possibly amount to "affirmative conduct" in violation of the Fourteenth Amendment, and the City's efforts to address homelessness given the finite resources available to it cannot amount to "deliberate indifference."

Plaintiff's second claim for state-created danger in violation of the Fourteenth Amendment to the U.S. Constitution fails because the City engaged in no affirmative act nor evidenced deliberate indifference to place Plaintiff in danger.

In opposition, Plaintiff stretches the definitions of "affirmative conduct" and "deliberate indifference" to new lengths, arguing that by opening and later closing a homeless shelter, the City has violated Plaintiff's constitutional rights.

The "'general rule is that a state is not liable for its omissions' and the Due Process Clause does not 'impose a duty on the state to protect individuals' ..."  *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019); *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (The Fourteenth Amendment "generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests.").

The "state-created danger" exception alters the general rule that the Due Process Clause does not obligate governments to protect citizens from harm.  *Murguia v. Langdon*, 61 F.4th 1096, 1110-11 (9th Cir. 2023).

This exception has two requirements.  *Murguia*, 61 F.4th at 1111.  "First, the exception applies only where there is 'affirmative conduct on the part of the state in placing the plaintiff in danger.'"  *Id.*; *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) ("[G]overnment employees" must "affirmatively place the plaintiff in a position of danger, that is, where their actions create or expose an individual to a danger which he or she would

CITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    not have otherwise faced.'") (simplified).   "The affirmative act must create an actual,

2    particularized danger, and the ultimate injury to the plaintiffs must be foreseeable." *Hernandez*,

3    897 F.3d at 1133 (citations omitted).   "Second, the exception applies only where the state acts

4    with 'deliberate indifference' to a known or obvious danger." *Murguia*, 61 F.4th at 1111.

5    The origins of the state created danger doctrine are rooted in *DeShaney v. Winnebago Cnty.*

6    *Dep't of Soc. Servs.*, 489 U.S. 189 (1989), where the United States Supreme Court held that

7    "when the State takes a person into its custody and holds him there against his will, the

8    Constitution imposes upon it a corresponding duty to assume some responsibility for his safety

9    and general well-being." *Id.* at 199-200.   The Due Process Clause limits state action; it is not

10    a "guarantee of certain minimal levels of safety and security." *Id.* at 195. "Simply failing to

11    prevent acts of a private party is insufficient to establish liability." *Martinez v. City of Clovis*, 943

12    F.3d 1260, 1271 (9th Cir. 2019).

13    The City's actions in creating a homeless shelter and then later closing the shelter are not

14    the type of fact pattern envisioned by the U.S. Supreme Court in *DeShaney*.

15    Accordingly, and as addressed in the City's moving papers and as discussed above under

16    Section II.C., the City's actions do not amount to either affirmative conduct or deliberate

17    indifference.   Rather, the City is working day in and day out to develop creative solutions in

18    addressing homelessness within the confines of *Martin v. Boise* and, again, with the finite

19    resources available to it.   This claim should therefore be dismissed.

20    C.      Plaintiff's third claim for a *Monell* violation under 42 U.S.C. § 1983 fails because
             it is not pled with sufficient particularity.
21

22    Plaintiff's third claim for a *Monell* violation under 42 U.S.C. § 1983 fails because it asserts

23    only conclusions.

24    In opposition, Plaintiff argues that based on the City's "tortured" reading of *Martin v. Boise*,

25    the City has "enacted an affirmative policy under which it refused to do anything about the

26    massive homeless encampment that had taken over Railroad Drive."   This argument

27    misconstrues what constitutes a *Monell* claim.

28

10

1339083

A municipal defendant cannot be held liable under 42 U.S.C. § 1983 unless a plaintiff can show that the entity's policy, practice, or custom was the moving force behind the constitutional violation. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). *Monell* claims must contain sufficient factual allegations to give fair notice to the opposing party and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Conclusory *Monell* pleading has been rejected in this Circuit. *See A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (a plaintiff must do more than allege that a *Monell* defendant "maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint) (citing *Starr*, 652 F.3d at 1216).

Plaintiff attempts to plead a *Monell* claim under unconstitutional custom or policy. An unwritten policy or custom can form the basis for a *Monell* claim, but it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency such that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The complaint must provide "additional facts regarding the specific nature of [the] alleged policy, custom, or practice." *A.E.*, 666 F.3d at 637.

Plaintiff pleads no specific facts regarding an unconstitutional policy, custom, or practice, and no facts showing that any supposed practice was "of sufficient duration, frequency, and consistency such that the alleged custom or practice has become a traditional method of carrying out policy." *Harper v. County of Merced*, 2018 WL 5880786, at *6 (E.D. Cal. Nov. 8, 2018) (citing *Trevino*, 99 F.3d at 918). Instead, Plaintiff alleges the conclusion that the City "enacted an affirmative policy under which it refused to do anything about the massive homeless encampment that had taken over Railroad Drive," which is wholly insufficient. *See Harper*, 2018 WL at *5 (dismissing a "policy, practice, or custom" claim with a conclusory

1339083

allegation of a "widespread or longstanding custom and practice of not carefully handling mentally ill individuals"); *see also Cain v. City of Sacramento*, 2017 WL 4410116 at *3 (E.D. Cal. October 4, 2017) ("[A] plaintiff must do more than allege that a <u>Monell</u> defendant 'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs' alleged elsewhere in the complaint.") (citing *AE ex rel.*, 666 F.3d at 637); *Bagley v. City of Sunnyvale*, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017) ("Plaintiff's allegation that Sunnyvale has a policy '[t]o use or tolerate the use of excessive and/or unjustified force' is too vague to sufficiently allege a policy under *A.E.* Indeed, because Plaintiff has brought an excessive force claim, Plaintiff is essentially alleging that Sunnyvale has an 'official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs' alleged elsewhere in the complaint.").

The undisputed facts show that the City does not have a policy of abandoning Railroad Drive to serve as a "no-response or no-enforcement zone."   The Sacramento Police Department – like all City departments responding to and addressing the issues caused by homelessness – has finite resources and officers to allocate to such efforts and is responsible for policing all areas of the City (not just the area surrounding Plaintiff's property).  The same holds true for the City's Code Compliance Division.

Plaintiff offers no evidence sufficient to support a *Monell* violation, warranting dismissal.

D.     Plaintiff's fourth and fifth claims for public and private nuisance fail because the City is statutorily immune from liability.

Plaintiff's fourth and fifth claims for public and private nuisance under Civ. Code § 3490, *et seq.* and Civ. Code § 3501, *et seq.*, respectively, fail because the City is immune from liability under Gov. Code §§ 815, 818.2, and 820.2.

In opposition, Plaintiff argues these immunities do not apply based on Plaintiff's own, colloquial reading of the above nuisance provisions.  Plaintiff's singular argument is that because the term "should" – and not "may" or can – is used in City Code § 8.20.010, then the duty conferred is mandatory, not discretionary.  If such a reading of the statute were to be true, then *any* statute articulating civil or criminal liability using "should" (or "shall") would

1339083

1  mean an executive body has no discretion whatsoever to enforce or not enforce that law.  Our

2  criminal and civil justice systems would implode under such an interpretation.

3      Plaintiff cites a single case in support, *Elton v. County of Orange*, 3 Cal.App.3d 1053, 1059

4  (1970), but it has no bearing here.  The cited portion in Plaintiff's opposition merely holds that

5  a municipality or public employee cannot try and take advantage of the immunity conferred

6  by the Government Code by arguing that negligence is akin to "a failure to enforce the law."

7  *Id.* at 1059 ["Respondent contends its negligence … could be characterized as a failure to

8  enforce a law … To apply the section in the manner advocated by respondent would

9  completely eviscerate Government Code section 815.6."].

10      The City makes no such argument, and negligence is not even being alleged here,

11  rendering this citation inapposite.  As articulated in the moving papers, the City's exercise of

12  its discretionary functions regarding the enforcement of its municipal code constitute policy

13  decisions "[a]t the core of this immunity."  *Freeny v. City of San Buenaventura*, 216 Cal.App.4th

14  1333, 1341 (2013).

15      Since the City cannot be compelled to exercise its discretion in any particular manner,

16  Plaintiff's nuisance claims fail.

17      E.    Plaintiff's sixth claim for violation of Welf. & Inst. Code §§ 17000, 10000 fails
because these provisions confer on the City discretionary actions – not
18              mandatory duties; the City thus cannot be liable under Gov. Code § 815.6.

19      Plaintiff's sixth claim for violation of Welf. & Inst. Code §§ 17000, 10000 fails because

20  these provisions confer discretionary powers, not mandatory duties.  The City thus cannot be

21  liable under Gov. Code § 815.6 for failure to carry out a mandatory duty.

22      In opposition, Plaintiff argues these two provisions *do* mandate the City to act.  It is

23  unclear how Plaintiff arrived at this conclusion as Plaintiff cites no legal support.  Nor does

24  Plaintiff offer any argument to counter the established rule that mandatory duties exist only if

25  a statutory enactment affirmatively imposes the duty and provides implementing guidelines.

26  *B.H. v. County of San Bernardino*, 62 Cal.4th 168, 180 (2015).

27      As articulated in the moving papers, Article XI, Section 5 of the California Constitution

28  provides that a city may adopt a charter giving it the power to "make and enforce all ordinances

1339083

and regulations in respect to municipal affairs."   Cal. Const., Art. XI, § 5(a).   Under this principle, the City has sole discretion in the enforcement of statutory provisions such as Welf. & Inst. Code §§ 17000, 10000.  There is no mandatory duty under either section 17000 or 10000 to provide medical care to the homeless and guidelines by which to implement such care, and because neither section confers a mandate on the City, those sections are deemed discretionary.  *Id.*

Since liability cannot be imposed based on the City's discretionary enforcement decisions, this claim and others like it are facially invalid.

F.      It is immaterial that *Butterworth* did not interpret Article I, Section 1 of the California Constitution; its holding controls here and the "municipal home rule" thus bars Plaintiff's seventh claim for relief.

Plaintiff's seventh claim for violation of Article I, Section 1 of the California Constitution fails because the "municipal home rule" dictates that municipalities such as the City have supreme authority in matters of internal or local concern.  *Butterworth v. Boyd*, 12 Cal.2d. 140, 136 (1938).

In opposition, Plaintiff argues that because *Butterworth* "did not analyze California Constitution, Article I, Section 1," then it cannot be relied on in assessing the facial validity of this claim.

Plaintiff's argument is neither here nor there.  The California Supreme Court's holding in *Butterworth* is not limited to any single constitutional provision.  Rather, *Butterworth* discusses the "municipal home role" and articulates as examples several activities that have been held to fall within the definition of "municipal affairs," including, significantly, "[s]upervision of sanitary conditions in a city, and provision for the health of its inhabitants" and "[p]rotection of property and lives."  *Id.* at 147.  Regulation of the homeless population within City limits thus falls solely within the police power of the City as laid out in Article XI, Section 5 of the California Constitution.  *See id.* at 146.

Therefore, considering the City's "supreme authority" to regulate municipal affairs within City limits, and that Plaintiff's property and the nearby homeless population are within City limits, this claim fails.

14

III. CONCLUSION

With its opposition, Plaintiff has now had an opportunity to explain why its allegations, or any additional evidence, could combine to establish a single claim for relief.  Plaintiff has not met this burden, justifying dismissal in full.  The City thus respectfully requests this Court grant its motion and enter judgment for the City.


DATED:  October 30, 2023                SUSANA ALCALA WOOD,
                                        City Attorney


                               By:_____/s/ Gökalp Gürer_____
                                        GÖKALP Y. GÜRER
                                        Senior Deputy City Attorney

                                        Attorneys for the
                                        CITY OF SACRAMENTO

1339083